In the Matter of the Estate of EMILE HOVELAQUE, Deceased.

Surrogate's Court, New York County, December 10, 1940.

*Coudert Brothers,* for the petitioners.

*Thomas F. McAndrews,* special guardian.

FOLEY, S. The issue raised in this executors' accounting is whether there shall be an apportionment, between the income and principal of the residuary trusts, of the proceeds of notes and fractional interest in notes owned by the testator. The notes, all of which are dated October 1, 1913, bear no interest and represent the purchase price of certain properties conveyed to the makers. They are payable at various dates up to January 1, 1958, when the last note becomes due. Payment of the notes is guaranteed by the United States Steel Corporation and those maturing since the date of the decedent's death on July 19, 1936, have been paid.

The determination of the question presented is dependent upon the intent of the testator as expressed in the will, the character of the trust property, the value thereof as compared to the other estate assets and the relationship to the decedent of the beneficiaries as preferred objects of the testator's bounty.

The testator died on July 19, 1936, survived by a daughter, Claire H. B. Hovelaque, and a son, Pierre F. Hovelaque, as his only next of kin. He left a gross estate amounting to $139,061.44. The net estate after deducting debts and administration expenses amounts to approximately $117,000. The will provides for outright legacies to servants and friends in the sum of $7,200 and directs that these legacies be free from any inheritance or succession taxes which are to be paid from the residuary estate. It then directs the creation of two trust funds of $20,000 each for the benefit of a brother and a niece. Pursuant to the terms of the will, the trust for the brother has already terminated and is payable outright to the remainderman. The residuary estate, therefore, consists of approximately $69,000 made up almost entirely of the notes valued at $65,671.24 payable at various dates after the decedent's death and up to January 1, 1958. There does not appear to be any open market for the sale of the notes.

By the fourteenth paragraph of the will the residuary estate is divided into two equal shares, one-half of one such equal share is given outright to the testator's son, Pierre F. Hovelaque. The other one-half of such equal share is placed in trust for the son, Pierre, for life with remainder over upon his death to his issue, if any. One-quarter of the remaining one-half equal share of the residuary is placed in trust for the benefit of the testator's daughter, Claire H. B. Hovelaque, until she arrives at the age of twenty-five years or sooner marries, when upon the happening of either event

the principal is to be paid over to her. The remaining three-quarters of said one-half share is placed in trust for the benefit of the daughter for life with remainder over upon her death to her issue. In the event either child shall die leaving no issue, then the share of such child is to be paid to the surviving child or, if deceased, to his or her issue.

The sixteenth paragraph of the will authorized the trustees to continue as part of the trust the assets owned by the testator at the date of his death with " full power and authority whenever in their sound judgment and discretion it may be necessary or proper to sell any of the said property."

Since the corpus of the residuary trusts is comprised almost solely of the notes bearing no interest, it is apparent that the testator's children, the primary objects of his bounty, will receive practically no income until the proceeds of the notes are received and reinvested. Should an intent to accomplish such a result be imputed to the testator? In the absence of language in the will or circumstances pointing to the contrary, the courts will assume that the testator in placing his residuary estate in trust intended both the life tenants and the remaindermen to obtain enjoyment of the income of his property.

In *Matter of Clarke* (166 Misc. 807) I held that the established rule of apportionment in respect of unproductive real property was also applicable to unproductive personal property. In that case the proceeds of the sale of a collection of paintings were directed to be apportioned between the principal and income of the residuary trust. The reasoning and conclusion in the *Clarke* case are applicable here.

Recently, in *Matter of Pennock* (260 App. Div. 181), the Appellate Division of the First Department had occasion to review the authorities dealing with apportionment. The *Pennock* case involved a wasting asset. However, the principle of apportionment was stated by the court to have its fundamental basis in justice and equity. Mr. Justice DORE wrote in the decision of the court in that case — the " reason is to do justice and deal fairly with both life tenant and remaindermen and give effect to the testator's intention that both shall enjoy the same thing. Apportionment should be made to give to each of the parties a fair and equitable share of the fund the testator intended both should enjoy."

In support of his contention that the notes in the instant case constitute corpus, the special guardian for infant contingent remaindermen of the trusts relies principally on the case of *Rubenstein* v. *Rubenstein* (221 App. Div. 612). That case is readily distinguishable from the situation in the instance case. There the question was

whether an annual installment received in payment of the purchase of a lease sold by the testator in his lifetime was wholly income or wholly principal. The court held it was principal. It is apparent, however, from an analysis of the decision, that the question decided was as to the nature of the asset and not as to an apportionment of the payment between principal and income. No consideration was given to the expressions of the testator's intent, the circumstances surrounding the making of the will, the close relationship of the beneficiary or the magnitude of the particular asset as compared with the other assets of the estate, which would have been necessary if the case involved the application of the apportionment rule.

Upon all the facts and circumstances in the instant case, the surrogate holds that the proceeds of the notes when received must be apportioned between the income beneficiaries and the corpus of the residuary trusts. In making the apportionment, income will be allowed to the income beneficiaries at the rate of four per cent on the proceeds of the notes and fractional interests in notes, from one year after the date of death of the testator (which is determined the presumed date of conversion of the notes) to the respective dates of payment of the notes. The present worth of each note must be computed. Income will be paid to the life tenants on such present worth at the rate of four per cent as the income accrues. Such payment may be made annually or at lesser intervals as the trustees may determine in the exercise of their discretion.

The personal claim of the corporate executor as set forth in Schedule E of the account is approved.

Submit decree on notice construing the will and settling the account accordingly.